

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2006

# Williams v. Consovoy

Precedential or Non-Precedential: Precedential

Docket No. 04-3569

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Williams v. Consovoy" (2006). *2006 Decisions.* Paper 782.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/782

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3569

———

JOHN C. WILLIAMS,
                              Appellant


v.


ANDREW CONSOVOY;
ROLANDO GOMEZ-RIVERA;
RACHEL TORRES-CHOWANIEC;
RUBY WASHINGTON;
DON E. GIBBONS;
KEVIN MAHONEY;
NEW JERSEY STATE PAROLE BOARD


———


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-01809)
District Judge: Honorable Mary Little Cooper

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 29, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R.
GIBSON,[*] Circuit Judges


———

[*]The Honorable John R. Gibson, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Stephen M. Latimer
Loughlin & Latimer
Hackensack, NJ 07601
       *Counsel for Appellant*

Zulima V. Farber
       Attorney General of New Jersey
Lisa A. Puglisi
       Deputy Attorney General
Patrick DeAlmeida
       Assistant Attorney General
Richard J. Hughes Justice Complex
Trenton, NJ 08625
       *Counsel for Appellees Andrew Consovoy, Rolando
       Gomex-Rivera, Rachel Torres-Chowaniec, Ruby
       Washington, Kevin Mahoney, and the New Jersey State
       Parole Board*

Daniel R. Esposito
Kalison, McBride, Jackson & Murphy, P.A.
Warren, NJ 07059
       *Counsel for Appellee Donald E. Gibbons, Ph.D.*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Before us is John Williams's appeal from the District

Court's dismissal of his claims asserted under 42 U.S.C. § 1983

against a New Jersey parole officer and certain members of the

New Jersey State Parole Board ("Parole Board") for,

respectively, arrest and false incarceration, and failure to properly investigate the likelihood he would commit a crime if released on parole. Williams also appeals from the District Court's grant of summary judgment on his § 1983 claim against a private psychologist engaged by the Parole Board to perform a psychological evaluation. We have jurisdiction pursuant to 28 U.S.C. § 1291, and for the following reasons, we will affirm.

I.

In 1993, Williams pleaded guilty to second-degree sexual assault against a ten-year old girl, N.J.S.A. 2C:14-2b, pursuant to a plea agreement. In 1995, Williams was sentenced to a 10-year period of incarceration with no period of parole ineligibility, but in 1996, Williams was released on parole.

In 1997, Parole Officer Kevin Mahoney arrested Williams as a parole violator for Williams's failure to obtain approval for a change in his employment and residence and for failure to comply with the registration provisions of Megan's Law. On November 26, 1997, an Adult Panel of the New Jersey State Parole Board ("Parole Board") composed of Andrew Consovoy and Rolando Gomez-Rivera revoked Williams's parole. In

3

reaching this decision, the Parole Board considered and rejected the report of Officer Diane Formica, who recommended Williams's parole be continued because he had expressed remorse for his failure to comply with the conditions of his parole. The Parole Board then declared Williams ineligible for parole until 1998.

In April 1998, an Adult Panel of the Parole Board – this time consisting of Rachel Torres-Chowaniec and Ruby Washington – again evaluated Williams for parole. Before rendering a decision, the Parole Board ordered a psychological evaluation of Williams.

This evaluation was performed by Don E. Gibbons, Ph.D., a licensed psychologist employed at the time by Correctional Behavior Solutions, a private company with which New Jersey contracted to provide mental health services. In the course of his evaluation, Gibbons performed a clinical interview and administered various psychological and personality

examinations. Relying in part on Gibbons's evaluation, the Parole Board denied parole.[1]

On April 18, 2001, Williams filed an action pursuant to 42 U.S.C. § 1983 in the District Court, asserting four separate claims. First, Williams alleged Mahoney had seized him without probable cause and caused him to be arrested and falsely incarcerated, which seizure was in violation of the Fourth and Eighth Amendments. Second, Williams alleged Consovoy and Gomez-Rivera, on or before November 27, 1997, failed and refused to conduct an adequate investigation into whether Williams was likely to commit a crime if released on parole and caused him to be falsely incarcerated, which failure was deliberately indifferent to Williams's Eighth Amendment right to be free from cruel and unusual punishment. Third, Williams alleged Torres-Chowaniec and Washington, on or before April 27, 1999, failed to adequately investigate whether Williams was

---

[1]This denial was eventually reversed on appeal by the New Jersey Superior Court, Appellate Division in Williams v. N.J. State Parole Board, 763 A.2d 747 (N.J. Super. Ct. App. Div. 2000), in which that court concluded the Parole Board's finding that Williams would commit another crime if released was not supported by credible record evidence.

likely to commit another crime if released on parole, which failure caused Williams's false incarceration and was deliberately indifferent to his Eighth Amendment rights. Finally, Williams alleged that Gibbons had reported false and misleading information intended to cause the Parole Board to deny Williams parole, which denial resulted in Williams's false imprisonment and was deliberately indifferent to Williams's Eighth Amendment rights.

Gomez-Rivera, Torres-Chowaniec, Washington, and Mahoney moved to dismiss Williams's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The District Court granted the motion with respect to Mahoney and Gomez-Rivera on the ground that Williams did not have a cognizable § 1983 claim against them.[2]

---

[2]With respect to Torres-Chowaniec and Washington, the District Court concluded that those defendants were not entitled to absolute immunity in that although those defendants had performed adjudicative duties in deciding to deny Williams parole for which duties they were entitled to absolute immunity, those defendants had also performed investigative functions with regard to their failure to conduct an adequate investigation. On appeal, this Court disagreed and directed the District Court to enter summary judgment on Williams's claims against them on the ground that Torres-Chowaniec and Washington were entitled to absolute immunity because the acts they performed were wholly adjudicative in nature. Williams v. Consovoy, et al., 53 Fed. Appx. 664, 665 (3d Cir. 2002) (Becker, J.) (bench order).

6

Citing Heck v. Humphrey, 512 U.S. 477 (1994), the District Court reasoned that William's claim was uncognizable because § 1983 actions in which prisoners allege that a parole revocation decision was constitutionally infirm are challenges to the fact or duration of their confinement and are collateral attacks on state convictions that are properly addressed in habeas corpus proceedings. See Dist. Ct. Nov. 8, 2001 Slip. Op. at 9-17.

Gibbons then moved for summary judgment on Williams's § 1983 claim. On July 29, 2004, the District Court granted Gibbons's motion. Williams v. Consovoy, et al., 333 F. Supp.2d 297 (D.N.J. 2004). In that decision, the District Court concluded that because the Parole Board had ordered Gibbons to perform an evaluation to assist the Parole Board in making its parole determination, Gibbons had engaged in "adjudicative conduct" and was therefore entitled to absolute immunity. Id. at 301-02. By the parties' agreement, the District Court dismissed Williams's remaining claims on August 25, 2004. This timely appeal followed.

II.

A.

Williams first claims that the District Court was mistaken in dismissing his claims against Mahoney and Gomez-Rivera on the ground that those claims were barred by Heck v. Humphrey. We exercise plenary review over the District Court's grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 163 (3d Cir. 2006).

It is well-settled that when a state prisoner is challenging the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus, not a § 1983 action. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). In Heck, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence. Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that,

> "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

8

proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Thus, the threshold question becomes whether Williams's success on his § 1983 action would "necessarily demonstrate" the invalidity of the Parole Board's decision to revoke his parole, which would in turn render his § 1983 action uncognizable under Heck. We answer this question in the affirmative because success on the § 1983 claim would necessarily demonstrate the invalidity of the Parole Board's decision. See White v. Gittens, 121 F.3d 803, 807 (1st Cir. 1997) (concluding that § 1983 claim based on revocation of parole was barred by Heck; "[a] favorable decision in the § 1983 proceeding would necessarily call into question the validity of the state's decree revoking [plaintiff's] parole and ordering him back to prison. Heck therefore applies, and the § 1983 action is not cognizable in a federal court"); Butterfield v. Bail, 120 F.3d 1024, 1024 (9th Cir. 1997) ("[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of

parole"). Accordingly, because the Parole Board's decision has not been rendered invalid, Williams may not attack it via a § 1983 action, and the District Court's dismissal of Williams's claims against Mahoney and Gomez-Rivera was proper.

Williams cites Huang v. Johnson, 251 F.3d 65 (2d Cir. 2001), as support for the argument that because habeas relief is no longer available to him, he should nonetheless be permitted to maintain a § 1983 action. Huang held that a plaintiff for whom habeas relief was no longer available on the ground that he had been released from custody could nevertheless maintain a § 1983 action for false imprisonment. Id. at 75. Huang relied on the fact that, post-Heck, five Justices took the view in Spencer v. Kemna, 523 U.S. 1 (1998), that § 1983 relief should be available to address constitutional wrongs where habeas relief is no longer available. Huang, 251 F.3d at 75.

We decline to adopt Huang here. As we recently held in Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005), a § 1983 remedy is not available to a litigant to whom habeas relief is no longer available. In Gilles, we concluded that Heck's favorable-termination requirement had not been undermined, and, to the

10

extent that its validity was called into question by <u>Spencer</u>, we observed that the Justices who believed § 1983 claims should be allowed to proceed where habeas relief is not available so stated in concurring and dissenting opinions in <u>Spencer</u>, not in a cohesive majority opinion. <u>Gilles</u>, 427 F.3d at 209-10. Thus, because the Supreme Court had not squarely held post-<u>Heck</u> that the favorable-termination rule does not apply to defendants no longer in custody, we declined in <u>Gilles</u> to extend the rule of <u>Heck</u>, and likewise decline to extend it here. <u>See</u> <u>Gilles</u>, 427 F.3d at 210-11.

B.

Williams next claims the District Court erred in granting summary judgment on his § 1983 claims against Gibbons. We exercise plenary review over the District Court's grant of summary judgment, <u>County Concrete Corp.</u>, 442 F.3d at 163, and disagree.

While § 1983 makes no mention of an immunity defense, an official is immune from a § 1983 suit if she was "accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871." <u>Malley v. Briggs</u>, 475 U.S.

11

335, 340 (1986). Nevertheless, even if an official did not enjoy absolute immunity at common law, she may still be entitled to absolute immunity if she performs "special functions" that are analogous to those functions that would have been immune from tort actions at the time Congress enacted § 1983. Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) (citing Butz v. Economou, 438 U.S. 478, 506, 508 (1978)). This immunity "was and is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" McArdle v. Tronetti, 961 F.2d 1083, 1084 (3d Cir. 1992) (Alito, J.) (quoting Butz, 438 U.S. at 512). Accordingly, absolute immunity attaches to those who perform functions integral to the judicial process. Burns v. Reed, 500 U.S. 478, 484 (1991).

Under this "functional" approach, courts look to the nature of the functions being performed by the actor in question and evaluate the effect that exposure to liability would have on an appropriate exercise of that function. Hughes, 242 F.3d at 125. Applying this approach, courts conclude that individuals who perform investigative or evaluative functions at a

12

governmental adjudicative entity's request to assist that entity in its decisionmaking process are entitled to absolute immunity. See McArdle, 961 F.2d at 1085 (psychiatrist who performed evaluation of prisoner at court's request entitled to absolute immunity); Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 744 (8th Cir. 1998) (psychologist who performed evaluation of sex offender at court's request entitled to absolute immunity).

Applying this "functional" approach, we conclude that Gibbons performed a function integral to the judicial process and is therefore situated similarly to the mental health professionals in McArdle and Morstad to whom absolute immunity from § 1983 claims attached. Like those individuals, Gibbons performed an evaluation and presented his findings to the adjudicative Parole Board, which then relied on his report and expertise in reaching its ultimate decision to deny Williams parole. Like the District Court, we believe that by preparing his report at the Parole Board's request to assist in its decision-making, Gibbons acted as "an arm of the court," McCardle, 961 F.2d at 1085, and is therefore entitled to absolute immunity from Williams's § 1983 action.

13

Williams argues Gibbons should not be entitled to absolute immunity because Gibbons did not make an explicit recommendation as to whether or not to parole Williams.  We find this argument unpersuasive on the ground that the only way to ensure unvarnished, objective evaluations from court-appointed professionals is to afford them absolute immunity from suit for performing evaluations, regardless of whether those evaluations are ultimately found dispositive by the entity that requested them or are ultimately found lacking.  See Moses v. Parwatikar, 813 F.2d 891, 892 (8th Cir. 1987) (observing that by failing to afford absolute liability from § 1983 actions to court-appointed mental professionals, the threat of civil liability could "taint" the professionals' opinions and "[t]he disinterested objectivity, so necessary to an accurate competency determination, will be lost"); cf. Burns, 500 U.S. at 484 (observing that "it is 'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation'") (citation omitted).

III.

For the foregoing reasons, we conclude that Williams's §

1983 action against the Parole Board members is foreclosed by

Heck and reiterate that § 1983 suits that would otherwise be

barred by Heck are not cognizable merely because habeas relief

is no longer available to the plaintiff.  We also conclude that

Gibbons is entitled to absolute immunity from § 1983 liability

because his actions of evaluating Williams and preparing a

report of that evaluation were performed at the Parole Board's

request to assist in its adjudicative function of evaluating

Williams's eligibility for parole.  Accordingly, we will affirm the

District Court.